**Sidney WOLFE, Plaintiff,**

v.

**Caspar W. WEINBERGER, Secretary of the Department of Health, Education and Welfare, Defendant.**

**Civ. A. No. 74–454.**

United States District Court,
District of Columbia.

Oct. 31, 1975.

---

Earl J. Silbert, U. S. Atty., Arnold T. Aikens, Peter C. Schaumber, Asst. U. S. Attys., Washington, D. C., for defendant; Peter Barton Hutt, Asst. Gen. Counsel, Thomas Scarlett, Atty., Food and Drug Div., Dept. of Health, Ed. and Welfare, Rockville, Md., of counsel.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### I. BACKGROUND

This is an action in which plaintiff, Dr. Sidney Wolfe, seeks to compel the production by the Department of Health, Education, and Welfare of the transcripts of all meetings of the Food and Drug Administration's Over-the-Counter Antacid Drugs Advisory Review Panel (hereinafter, "the Antacid Panel"). The meetings in question took place between February 22, 1972, and January 9, 1973. On December 17, 1973, plaintiff Wolfe requested the transcripts from the FDA, which is a unit of the Department of Health, Education and Welfare, in a letter in which he invoked the Freedom of Information Act, 5 U.S.C. § 552, as the basis for his request. On January 21, 1974, his request was denied in a letter by the Acting Assistant Commissioner for Public Affairs of the FDA. On January 25, 1974, Wolfe appealed the denial to Dr. Charles C. Edwards, Assistant Secretary for Health, Education and Welfare. With his appeal unanswered, Wolfe filed this action on March 20, 1974. On May 15, 1974, Dr. Edwards denied Wolfe's request on appeal, concluding that "transcripts of those meetings must be regarded as internal agency records reflecting the deliberations of those engaged in the policy-making process, and thus exempt from disclosure under 5 U.S.C. § 552(b)(5) . . . ."[1]

Jurisdiction in this case is based upon the Freedom of Information Act, 552(a)(3). Plaintiff claims that disclosure is compelled by 5 U.S.C. § 552(a)(3), which

Larry P. Ellsworth, Anita Johnson, Washington, D. C., for plaintiff.

---

1. Letter, Edwards to Wolfe, exhibit 8, affidavit of Gary L. Yingling.

provides, in pertinent part, that: ". . . each agency, on request for identifiable records . . . shall make the records promptly available to any person." Plaintiff also contends that disclosure is required by § 10(b) of the Federal Advisory Committee Act, 5 U.S.C. App. I, which provides, in pertinent part, that: ". . . the records, reports, transcripts, minutes, . . . or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection . . . ." The defendant's response, as noted above, is that exemption five of the Freedom of Information Act, 5 U.S.C. § 552(b)(5), which protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency," interposes a bar to discovery under the Act. With respect to plaintiff's claim under the Advisory Committee Act, defendant points out that the discovery rights granted by § 10(b) of that statute are specifically made "subject to section 552 of Title 5," including the exemptions thereto. Accordingly, defendant again invokes the (b)(5) exemption as to plaintiff's Advisory Committee Act claim.

The case is currently before the Court on cross-motions for summary judgment. Both parties assert, and the Court agrees, that no material facts are in issue. The case turns on the availability of the (b)(5) exemption, to shield records of this advisory committee, sought under the Freedom of Information Act and the Advisory Committee Act.

## II. DISCUSSION

A. *The Antacid Panel is not an Agency Within the Meaning of the (b)(5) Exemption.*

As noted above, plaintiff claims that the transcripts of the panel's meetings must be disclosed as "identifiable records" under the Freedom of Information Act. Defendant apparently does not deny that the panel is an advisory committee,[2] that the transcripts are in the possession of the Department of Health, Education and Welfare,[3] or that the transcripts are "records" within the meaning of the Freedom of Information Act.[4] However, defendant submits that the panel functions "as an integral part of a public rulemaking process"[5] and is a body consisting "of special government employees whose deliberations are functionally equivalent to those of full-time agency employees who review scientific problems and make recommendations for regulatory action."[6] In short, the defendant's position would seem to be that, in addition to being an advisory committee, the panel is an agency within the meaning of the Freedom of Information Act, specifically exemption (b)(5), and that its deliberations are therefore entitled to protection from disclosure within the terms of that exemption.

In order to determine whether the panel is an agency within the meaning of (b)(5), it is first necessary to briefly consider the nature of the panel's role in the FDA's Over-the-Counter (OTC) Drug Review Program. The goal of the program as a whole is to establish regula-

---

2. See, *e. g.*, Defendant's Memorandum in Opposition to Plaintiff's Cross-Motion for Summary Judgment, at 22, n. 5.

3. See, *e. g.*, Defendant's Answer, ¶ 4.

4. Case law supports the proposition that advisory committee records in the possession of an agency are "records" within the meaning of the Freedom of Information Act. "[A]ny report prepared by the agency *or its consultants* must be regarded as a record of the agency." *Soucie v. David*, 145 U.S.App. D.C. 144, 448 F.2d 1067, 1076 (1971) (em-

phasis added). See also *Washington Research Project, Inc., v. Department of Health, Education and Welfare*, 164 U.S.App.D.C. 169, 504 F.2d 238 (1974); *Wellford v. Hardin*, 315 F.Supp. 175 (D.Md.1970), aff'd, 444 F.2d 21 (4th Cir. 1971).

5. Defendant's Memorandum in Opposition to Plaintiff's Cross-Motion for Summary Judgment, at 7.

6. Memorandum in Support of Defendant's Motion to Dismiss or for Summary Judgment, at 43.

tions specifying the conditions under which over-the-counter drugs, divided into various therapeutic categories (such as antacids) for purposes of the program, are to be considered as safe and effective and not misbranded. For each therapeutic category, a panel of experts (such as the Antacid Panel) is appointed to receive and evaluate information on drugs. The panel receives written data and views and hears oral presentations from all interested parties. It also discusses and evaluates such submissions and presentations. (In the case of the Antacid Panel, those discussions were closed to the public and are the subject of the transcripts to which the plaintiff seeks access in this action.) The end product of the panel's deliberations is a report to the Commissioner of the FDA containing the panel's conclusions as well as recommended regulations. The Commissioner reviews the panel's recommendations and formulates proposed regulations for publication in the Federal Register. The Commissioner can, and on occasion does, simply adopt *in toto* the panel's recommendations. Opportunity for public comment and objection is provided before the Commissioner promulgates the final regulations.

It cannot be doubted that OTC panels perform a crucial role in the decision-making process. In the instant case, the Commissioner adopted the OTC Antacid Panel report as his own. But, as the Court of Appeals for this Circuit has stated, " . . . the degree of scrutiny its [an advisory panel's] decisions are given on review is . . . beside the point" in determining whether that panel is an agency. *Washington Research Project, Inc. v. Department of Health, Education and Welfare,* 164 U.S.App.D.C. 169, 504 F.2d 238, 248 (1974). "The important consideration," the court continued, "is whether it has any authority in law to make decisions." *Id.* The FDA has, in effect, admitted ·(and the description of the drug review program contained in the pleadings in this case certainly indicates) that the OTC Antacid Panel has no such authority. In the

final regulations adopted as a result of the review of the over-the-counter antacid drugs by the panel and the Commissioner, the Commissioner noted:

> "Some of the comments reflected an erroneous impression about the role of a panel in the OTC drug review. Pursuant to section 9(b) of the Federal Advisory Committee Act, the OTC drug review panels are utilized *solely for advisory functions.* Determinations of action to be taken and policy to be expressed with respect to matters upon which an advisory committee reports or makes recommendations to the Food and Drug Administration *must be made solely by the Commissioner."* 39 *Fed.Reg.* 19862 (June 4, 1974) (emphasis added).

It is clear to this Court that the Antacid Panel does not have that "substantial independent authority in the exercise of specific functions" which would qualify it as an "agency" within the meaning of the Freedom of Information Act. *Soucie v. David,* 145 U.S.App.D.C. 144, 448 F.2d 1067, 1073 (1971). Accordingly, the (b)(5) exemption to the Act for "inter-agency or intra-agency memorandums" is not available to prevent disclosure of the panel's deliberations as recorded in the transcripts, for the panel is not an "agency" within meaning of the Act and, specifically, the (b)(5) exemption.

B. *The (b)(5) Exemption is Inapplicable to the Antacid Panel Under the Scheme of the Federal Advisory Committee Act, as Read in Conjunction with the Freedom of Information Act.*

 Defendant asserts that the Federal Advisory Committee Act explicitly recognizes an advisory committee's right to invoke (b)(5), for discovery of advisory committee records under the Act is made subject to the Freedom of Information Act, including the exemptions thereto. This Court's reading of the two statutes leads to precisely the opposite conclusion. In *Gates v. Schlesinger,* 366 F.Supp. 797 (D.D.C.1973),

*appeal dismissed,* D.C. Cir. No. 74–2013 (Jan. 23, 1975), Judge Aubrey Robinson articulated a convincing argument to the effect that an advisory committee cannot have a "double identity" as an agency and thus cannot invoke the (b)(5) exemption:

> "The Federal Advisory Committee Act utilizes the definition of agency contained in the Administrative Procedure Act, 5 U.S.C. § 551(1), which is applicable also to the Freedom of Information Act. It is significant that the Federal Advisory Committee Act contains a separate and distinct definition of an 'advisory committee,' thus supporting the proposition that an advisory committee is not an 'agency'." 366 F.Supp. at 798–99 (footnote omitted).

The Court concurs in Judge Robinson's reasoning. The Court also notes that the definition of "advisory committee" in the Advisory Committee Act specifically excludes "any committee which is composed wholly of fulltime officers or employees of the Federal Government," thus providing further evidence that "agency" and "advisory committee" were not meant by Congress to be congruent concepts. See § 3(2) of the Advisory Committee Act.

Defendant asserts that to conclude that the (b)(5) exemption is not available to shield transcripts of Antacid Panel deliberations would be tantamount to ignoring the clear language of the Advisory Committee Act, which specifically makes the Freedom of Information Act exemptions available to advisory committees. Such a conclusion is not necessarily warranted, however, for this Court could merely adopt an interpretation of the Advisory Committee Act, suggested by Judge June Green in *Nader v. Dunlop,* 370 F.Supp. 177 (D.D.C.1973), which would make (b)(5) available to an advisory committee when it *considers* an actual agency memorandum otherwise *protected by that exemption.* In the context of the present case, however, such an exemption would be of no use to defendant, for, as noted above, defendant seeks to shield transcripts of the committee's actual deliberations under the (b)(5) umbrella. Moreover, this Court finds that an interpretation of the Advisory Committee Act which would allow defendant to invoke (b)(5) in the context of this case would be in clear contravention of the purpose of the Act, as revealed by its legislative history, to insure "openness in the operations of advisory committees" and to allow "public access to [their] deliberations." H.R. Rep.No. 1017, 92d Cong., 2d Sess. 10 (1972), U.S.Code Cong. & Admin.News 1972, p. 3500. In *Gates, supra,* a case in which the Department of Defense sought to invoke (b)(5) to close working sessions of one of its advisory committees to the public, Judge Robinson stated:

> "Congress established openness to public scrutiny as the keystone of the Advisory Committee Act. Arguments that public participation and disclosure would inhibit debate and the frank expression of views were heard and rejected by Congress. . . . In the circumstances of this case, the Court finds exemption 5 inapplicable by its terms and irreconcilable by result with the very purpose of the Federal Advisory Committee Act." 366 F.Supp. at 799–800 (footnote omitted); see also legislative history sources cited at n. 9, 366 F.Supp. at 800.

Notably, several other members of this court have also considered this very issue, the applicability of (b)(5) to advisory committees, and have come to similar conclusions. *Aviation Consumer Action Project v. Washburn,* C.A.No. 1838–73 (D.D.C. Sept. 10, 1974) (Bryant, J.), *appeal docketed,* No. 75–1086 (D.C.Cir.); *Don't Tear it Down, Inc., v. Sampson,* C.A.No. 74–381 (D.D.C. April 16, 1974) (Gasch, J.); *Nader, supra.* In this case, to allow the Antacid Panel to avail itself of the (b)(5) exemption in denying requests for transcripts of the panel's meetings would be tantamount to burying the type of de-

liberations which the Advisory Committee Act sought to bring to the light of day. This Court cannot accept defendant's literalistic approach to the statute and will not, as Judge Learned Hand put it, "be bound by the letter, when it frustrates the patent purpose of the whole statute." *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.), *aff'd*, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945); *see N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).

### C. *Additional Considerations.*

Two additional points must be made in considering the contentions of the parties. First, it is important to understand exactly what the defendant is and is not claiming with respect to the (b)(5) exemption. Defendant's position is that the "records" in question (the transcripts of the Antacid Panel's deliberations) are memoranda within an "agency," i. e. the committee itself. Defendant does not claim that these transcripts are deliberative memoranda within the larger agency, the FDA. The latter situation arose in *Washington Research Project, Inc. v. Department of Health, Education, and Welfare*, 164 U.S.App. D.C. 169, 504 F.2d 238 (1974). The documents in question in that case were reports prepared by a panel, known as an "initial review group," of the National Institute of Mental Health, which is a unit of the Department of Health, Education, and Welfare. The Court of Appeals rejected the contention that the initial review group was an agency within the meaning of the Freedom of Information Act and found instead that the group was an advisory committee and, as such, "merely a unit within another agency." *Id.* at 245. As in the instant case, the documents were in the possession of the parent agency. Unlike the instant case, however, the documents in *Washington Research Project* were relied upon by the agency in the course of decision-making. The documents were "an integral part of the deliberative process," of the agency, *id.* at 250, and as such were entitled to the protection afforded by the (b)(5) exemption, since they were internal agency memoranda. In the instant case, defendant does not claim that the transcripts in question were part of the agency's deliberative process. To the contrary, defendant acknowledges that the transcripts "form no part of the record transmitted to, or read or relied upon by the Commissioner. The Commissioner bases his decision exclusively on the contents of the panel's report and supporting minutes, and the evidence on which the report is based."[7]

Second, it should be noted that the applicability of the Federal Advisory Committee Act to this case is problematical. The Act became effective on January 5, 1973. 5 U.S.C. App. I, § 15. All but one of the transcripts in question are of meetings which took place before that date. Thus, unless this Court were to apply the Act retroactively, plaintiff could not maintain his claim for transcripts of meetings that occurred prior to the effective date of the Act. In addition, defendant's position that the Advisory Committee Act explicitly recognizes the applicability of the (b)(5) exemption to advisory committees would be undermined. However, in light of this Court's holding that the transcripts are available under the Freedom of Information Act, it is not necessary to reach the retroactivity issue.

### III. CONCLUSION

This Court holds that the Antacid Panel is not an agency within the meaning of exemption (b)(5) of the Freedom of Information Act. Further, this Court rejects defendant's assertion that the Federal Advisory Committee Act recognizes the applicability of 5 U.S.C. § 552 (b)(5) to advisory committees and finds that the (b)(5) exemption is inherently inapplicable to advisory committees. Accordingly, the defendant must make the requested transcripts promptly available

7. Id., at 7.

to plaintiff, in compliance with the requirements of the Freedom of Information Act, 5 U.S.C. § 552.

An order in accordance with the foregoing will be issued of even date herewith.

## ORDER

This case comes before the Court on defendant's motion to dismiss or for summary judgment, and plaintiff's cross-motion for summary judgment. In accordance with the memorandum opinion of even date issued in this case, it is, by the Court, this 31st day of October, 1975,

Ordered, that plaintiff's motion be, and the same hereby is, granted; and it is

Further ordered, that defendant's motion be, and the same hereby is, denied; and it is

Further ordered, that within ten (10) days of the date of this order, defendant shall make available to plaintiff for inspection and copying all transcripts of the meetings of the Over-the-Counter Antacid Drugs Advisory Review Panel.