May 21, 1979

## 79-32  MEMORANDUM OPINION FOR THE SENIOR ASSOCIATE COUNSEL TO THE PRESIDENT

### Three Mile Island Commission—Closed Meetings—Federal Advisory Committee Act (5 U.S.C. App.)—Government in the Sunshine Act (5 U.S.C. § 552b)

This memorandum is to confirm our advice that legislation that would grant the President's Commission on the Accident at Three Mile Island the power to issue subpoenas is sufficient also to allow the closing of its meetings under certain circumstances. We have reviewed the statement by Senator Kennedy made on the Senate floor last week and, assuming that no contrary indications arise when the House considers the Three Mile Island subpoena legislation, we conclude that it is sufficient to make reasonably clear that exemption (10) of the Government in the Sunshine Act's exemptions, 5 U.S.C. § 552b(c)(10), will be available when this Commission is to discuss its issuance of subpoenas.* Our reasons for so concluding are as follows.

### I. Applicability of the Sunshine Act Exemptions in General

The Commission is an advisory committee subject to the provisions of the Federal Advisory Committee Act (FACA), 5 U.S.C. App. I (1979 Supp.), Pub. L. No. 92–463. The principal purpose of that Act is to provide a unified set of procedures for advisory committees to agencies

---

*Editor's Note:* This memorandum was written before the House of Representatives considered the resolution that ultimately became the Three Mile Island Commission subpoena legislation, Pub. L. No. 96–12, 96th Cong., 1st sess. (1979). The House debate, which occurred on the date this memorandum was transmitted (May 21, 1979), did not indicate a congressional intent contrary to that indicated by Senator Kennedy's remarks during the Senate debate. *See* 125 CONGRESSIONAL RECORD H. 3480–81 (daily ed., May 21, 1979). The resolution became law on May 23, 1979.

and to the President. As the Act's legislative history makes clear, the openness provisions of the FACA are to be liberally construed. *See* 5 U.S.C. App. I § 10(a)(1).[1] However, in the event that the President or his designee,[2] or the head of the agency to which an advisory committee reports, determines that one of the Sunshine Act exemptions applies, then the portion of a meeting to which it pertains may be closed so long as the required procedures are followed. *See* § 10(d) of the FACA; *see also* Office of Management and Budget Circular No. A-63.

## II. The Difficulty with Utilizing Exemption (10)

The problem with utilizing exemption (10) of the Sunshine Act is that it refers to "the agency's" issuance of a subpoena as the predicate for its use. This suggests the following difficulty: for exemption (10) to be employed, it would have to be determined that "the agency's" action is to be discussed at a committee meeting. As a rule, an advisory committee is not itself an "agency."[3] Therefore, in the normal situation an advisory committee would have to show that some other entity, denominated an "agency" for purposes of the exemption, is to issue a subpoena before exemption (10) may be applicable. In the present case, that reasoning would mean that the commission's own issuance of a subpoena, all other things being equal, would not suffice as the basis for closing a meeting of the Commission.

It might be said that the purpose of Congress in providing an exemption for the closing of a meeting to discuss the issuance of a subpoena would be undermined by concluding that, when the subpoena is not issued by an entity which is clearly an "agency" in law, such entity cannot seek to rely on exemption (10). We recommended the inclusion of a specific provision in the subpoena legislation to clarify that ambiguity.

---

[1] *See* S. Rept. 92-1098, 92d Cong., 2d sess. at 14: "* * * the intention of this legislation [the FACA] is that the standard of openness and public inspection of advisory committee records is to be liberally construed."

[2] Section 10(d) of the FACA provides that "the President, or the head of the agency to which the advisory committee reports," is to determine that a portion of a meeting may be closed in accordance with one of the Sunshine Act exemptions. In view of normal subdelegation doctrine, the President may delegate his express authority pursuant to the FACA to "the head of any department or agency in the executive branch, or any official thereof who is required to be appointed by and with the advice and consent of the Senate * * *." 3 U.S.C. § 301. In § 1-306 of Exec. Order No. 12130, the President delegated his functions under the FACA, except that of reporting annually to Congress and to the Administrator of General Services.

[3] The FACA provides that "agency" has the same meaning as it does in the Administrative Procedure Act. Section 551(1) of Title 5, United States Code, defines an "agency" as "each authority of the government of the United States whether or not it is within or subject to review by another agency." This definition has been judicially construed to require that an executive branch entity, to be deemed an "agency," have "substantial independent authority in the exercise of specific functions," *Soucie* v. *David*, 448 F. (2d) 1067, 1073 (D.C. Cir. 1971), or the "authority in law to make decisions," *Washington Research Project, Inc.* v. *HEW*, 504 F. (2d) 238, 248 (D.C. Cir. 1974). Such tests cannot normally be met by advisory committees, whose chief function is to make recommendations and not to exercise independent authority. *See*, *Wolfe* v. *Weinberger*, 403 F. Supp. 238, 241 (D.D.C. 1975); *Gates* v. *Schlesinger*, 366 F. Supp. 797, 799 (D.D.C. 1973).

### III. Clarification of the Commission's Status

The following was stated on the floor of the Senate by Senator Kennedy, the sponsor of the subpoena legislation.

> Mr. President, originally, the resolution [calling for subpoena power for the Commission] proposed by the administration contained a provision specifying that the commission could close its meetings under certain circumstances. We have deleted that provision because we believe that the Commission already has the power to close its meetings under those circumstances pursuant to the Federal Advisory Committee Act if the President or agency head approves. We believe that if meetings are to be closed in connection with this vital matter of public concern it should only be done with the approval of the President or relevant agency head—and that the Commission should not have the power to close its meetings on its own. [125 CONGRESSIONAL RECORD § 6185 (daily ed., May 17, 1979.)]

The reference to the legislation proposed by the Administration makes plain that the exemption which the Administration sought to make applicable to the commission—in particular, exemption (10)—should be considered already available. Specifically, the Administration's proposal provided that the term "agency" for purposes of the Sunshine Act exemptions "shall be construed to apply to this Commission." Accordingly, the evident meaning of Senator Kennedy's comment is that what the Administration had sought to make clear already exists with respect to the Commission—that is, that this Commission can in appropriate circumstances be considered an "agency" for the purpose of exemption (10).[4]

An argument that Senator Kennedy's statement is not sufficient to establish that the Commission may utilize exemption (10) in particular—assuming no contrary indication by the House when it considers the legislation—would appear specious. It would be inappropriate to rely on the general proposition that, normally, advisory committees are not "agencies," because this Commission is in a special situation, given the legislative history discussed above. Also, in light of that clarification, to accept the contention that the Commission's meetings cannot be closed on the basis of exemption (10) is to frustrate the apparent aim of Congress in granting the commission subpoena power: namely, to make certain that the commission can conduct a thorough investigation, which at times may require closure of certain portions of meetings to consider the use of subpoena power.

The legislative history of the Sunshine Act is not to the contrary. The provision making Sunshine Act exemptions applicable to advisory

---

[4] We should add that Senator Kennedy's reference to the determination by the President, or agency head, of the grounds for closing a Commission meeting simply restates the provision of § 10(d) of the FACA.

committees, which arose in a floor amendment, is based on the premise that the FACA, which deals with meetings, should have a set of exemptions that also refer to meetings, instead of ones that refer to documents. *See* 122 CONGRESSIONAL RECORD H. 24208–09, 94th Cong., 2d sess. (1976). Also, as the House conference report makes plain, that provision was intended to disapprove the use of exemption (5) of the Freedom of Information Act, 5 U.S.C. § 552(b)(5), which deals with internal deliberative memoranda. As was said, "[t]he chief concern in this regard has been application of exemption (5) a provision intended to protect the confidentiality of purely *internal* governmental deliberations, as a basis for closing discussions with and among *outside* advisers." H. Conf. Rept. 1441, 94th Cong., 2d sess. 26 (1976). [Emphasis in original.] But the desire to end reliance on such a relatively broad exemption designed to protect "full and frank" discussions in general does not militate against the use, in present circumstances, of a much more precise exemption designed to protect frankness in the deliberations of an entity with subpoena power—particularly when the Congress has indicated explicitly that that entity has the power to use such an exemption.

## IV. Conclusion

We conclude that the Commission's meetings dealing with its issuance of subpoenas may be closed on the basis of exemption (10), assuming that there is determined to be a need for so closing such meetings. Our conclusion is confined to the availability of exemption (10). In the context of other exemptions using the word "agency," such as exemption (2) ("internal personnel rules and practices of an agency") and exemption (9)(B) ("frustrate implementation of a proposed agency action"), we consider that the term "agency" should be interpreted to mean "President or agency." That is, to make the Sunshine Act exemptions consistent with the scheme of the FACA, it is necessary to read "agency" as including the President. But if, for example, a proposed Presidential or agency action is not likely to be frustrated within the meaning of exemption (9)(B) by an open meeting, exemption (9)(B) would not in our view apply. For although Senator Kennedy's language refers generally to "certain circumstances" in which closure of commission meetings would be justified, it seems most reasonable to limit those circumstances, insofar as they are arguably relevant to the subpoena context.

LARRY A. HAMMOND
*Deputy Assistant Attorney General*
*Office of Legal Counsel*